UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERTO BONAT HERNANDEZ, | CASE NO. C26-0759JLR |
| Petitioner, | ORDER |
| v. | |
| BRUCE SCOTT, et al., | |
| Respondents. | |

## I.   INTRODUCTION

Before the court is Petitioner Roberto Bonat Hernandez's petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Pet. (Dkt. # 1); Traverse (Dkt. # 13).)  The Government[1] opposes the petition.  (Return (Dkt. # 10).)  The court has considered the

---

[1] The Federal Respondents are former U.S. Attorney General Pamela Bondi; Acting Director of United States Immigration and Customs Enforcement ("ICE") Todd Lyons; United States Attorney for the Western District of Washington Charles Neil Floyd; and the Executive Office for Immigration Review (collectively, the "Government").  (Pet. ¶¶ 15-17.)

ORDER - 1

petition, the parties' submissions, the relevant portions of the record, and the applicable law.  Being fully advised, the court GRANTS the petition.

## II.    BACKGROUND

Petitioner is a citizen of Cuba who lawfully entered the United States through Miami International Airport on October 9, 2023.  (Pet. ¶ 1; Rodriguez Decl. (Dkt. # 11) ¶¶ 3-4).)  At that time, the Government granted Petitioner paroled entry to the United States under 8 U.S.C. § 1182(d)(5)(A) and released him from federal custody.  (Rodriguez Decl. ¶ 4.)  Petitioner subsequently applied to adjust his immigration status pursuant to the Cuban Adjustment Act ("CAA").  (Pet. ¶ 1.)

On December 17, 2025, ICE Enforcement and Removal Operations conducted field operations in Beaverton, Oregon, and, after encountering Petitioner, re-detained him.  (Rodriguez Decl. ¶ 5.)  The Government served Petitioner a Notice to Appear ("NTA") and transferred him to the Northwest ICE Processing Center, where he has since remained.  (*Id*. ¶¶ 6, 8; Morris Decl. (Dkt. # 12) ¶ 2, Ex. 1 (NTA).)  Subsequently, Petitioner twice unsuccessfully moved to terminate removal proceedings based on his intent to seek adjustment of status under the CAA.  (Rodriguez Decl. ¶ 9.)  On February 26, 2026, Petitioner filed a bond redetermination request with the IJ, but later withdrew his request.  (*Id*. ¶ 10.)  Petitioner's Master Calendar hearing was scheduled for March 31, 2026.  (*Id*. ¶ 11.)  The Government represents that it contacted the Cuban government in December 2025 to inquire whether it would accept Petitioner's repatriation and that the Cuban government agreed in March 2026 to accept Petitioner should he be deemed removable.  (*Id*. ¶¶ 12-13.)

ORDER - 2

On March 5, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking his immediate release or, in the alternative, a bond hearing. (Pet. ¶ 114.)  Petitioner asserts that his re-detention violates his due process rights, the Administrative Procedure Act ("APA"), and the Fourth Amendment.  (*See generally* Pet.)  The petition is now fully briefed and ripe for the court's consideration.

### III.    ANALYSIS

The court considers each of the parties' arguments in turn.

**A.    Petitioner's Re-detention is Unlawful.**

Habeas petitioners must provide by preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. V  The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  Thus, even when the government believes it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process.  *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.")

ORDER - 3

(citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Parole Statute provides the Secretary of Homeland Security discretion to grant parole on a case-by-case basis for "urgent humanitarian reasons or significant public benefit [.]" 8 U.S.C. § 1182(d)(5)(A). When the Secretary grants a noncitizen entry to the United States on parole, such

> [r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal.

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

DHS's decision to revoke a noncitizen's parole under § 1182(d)(5)(A) must be made on an individualized basis and carried out only after the purposes of the parole have been served. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) ("Common sense suggests . . . that parole given only on a case-by-case basis is to be terminated only on such a basis.") (citation omitted); 8 U.S.C. § 1182(d)(5)(A). Furthermore, the noncitizen must receive written notice of the parole's termination. 8 C.F.R. § 212.5(e).

ORDER - 4

Here, the court concludes that the Government (1) revoked Petitioner's parole and brought him into federal custody without adequate consideration of individualized facts and circumstances, including the absence of changes that justify revocation of his parole, and (2) re-detained him without the lawful authority of persons authorized to revoke his release or the minimum amount of process due, both of which violate his rights under the Fifth Amendment.

In so holding, the court rejects the Government's assertions that it may validly revoke Petitioner's parole without notice or process because (1) Petitioner's parole expired in June 2025 and (2) "Petitioner is mandatorily detained as an arriving alien." (*See generally* Return); *see P.T. v. Hermosillo*, No. C25-2249KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).  Several courts in this Circuit that have reviewed this question determined that neither a now-expired parole nor a noncitizen's status as an arriving alien is sufficient for the Government to revoke parole without complying with the relevant statutory and regulatory provisions.  *Bostock*, 792 F. Supp. 3d at 1123; *Dieng v. Hermosillo*, No. C26- 0190LK, 2026 WL 411857, at *9 (W.D. Wash. Feb. 13, 2026); *Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (compiling cases).

First, as to Petitioner's individualized circumstances, the Government does not assert that the DHS Secretary determined that the purposes of Petitioner's parole have been served or that humanitarian reasons and public benefit do not warrant parole.  (*See*

ORDER - 5

*generally* Return); 8 C.F.R. § 212.5(e); *see* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled").  Similarly, the Government does not assert that Petitioner has arrests or criminal history in the United States.  (*See* Morris Decl. ¶ 2, Ex. 2 (Dec. 2025 I-213) at 4 ("Subject has not been arrested or convicted of a Criminal Offense.").)

The Government's appeal to the parole's so-called expiration is similarly unpersuasive.  (Return at 5-6.)  Other courts that have considered this question have held that a petitioner's "parole remains active despite the expiration of [the] I-94." *Arias*, 2025 WL 3295385, at *4.  First, because the I-94 is not specific to noncitizens paroled under Section 1182 and because the departure date is recorded at the time the form is issued, "the listed departure is unlikely to bind humanitarian paroles who are governed under the parole framework[.]" *Id*.  Furthermore, "[a]n *ex ante* record cannot constitute the real-time 'opinion of the Attorney General' that the purpose of parole has been served and the noncitizen must be detained or removed." *Id*. (emphasis in the original) (citing 8 U.S.C. § 1182(d)(5)(A)).  Consequently, Petitioner's expired I-94 does not constitute a basis for his continued detention.

Next, as to Petitioner's due process rights, the Government's conduct is deficient in several ways.  Because Petitioner challenges an administrative action depriving him of his liberty, the *Mathews* balancing test applies here.  The *Mathews* test determines whether an administrative procedure provides the process constitutionally due and weighs three factors: (1) the petitioner's private interest, (2) the risk of an erroneous deprivation,

ORDER - 6

and (3) the Government's interest.  *See Mathews*, 424 U.S. at 335.  In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context."  53 F.4th 1189, 1206-07 (9th Cir. 2022).  District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Torres v. Hermosillo*, No. C25-2687LK, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173KKE, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

The court agrees with Petitioner that the *Mathews* test compels a finding that due process required the Government to provide notice and an opportunity to respond *before* depriving him of his liberty.  (*See* Traverse at 7-9.)  In so holding, the court adopts the reasoning set forth by the Honorable Kymberly K. Evanson in *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025) and finds (1) Petitioner's interest in not being detained is "the most elemental of liberty interests[,]" (2) the risks of erroneous deprivation of liberty are high, and (3) the Government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was previously released.  *Id.* at 1320-24 (citation omitted).  Therefore, the court concludes that the *Mathews* factors weigh in Petitioner's favor and his re-detention without notice or a pre--deprivation hearing violated his due process rights.

Finally, the Government raises a jurisdictional challenge to the court's ability to consider Petitioner's APA claim.  (Return at 19-20.)  The Government's arguments are nearly identical to those raised by the Government in *Abadin v. Noem*, No.

ORDER - 7

C25-2411JLR-SKV, 2026 WL 217148, at *3 (W.D. Wash. Jan. 28, 2026), in which the Government asserted that the petitioner was subject to mandatory detention and that the court lacked subject matter jurisdiction over his APA claim.  In *Abadin*, this court rejected the Government's narrow reading of the APA and, instead, held that "Congress explicitly authorized judicial review of final orders concerning 'all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States' for noncitizen detainees[.]" *Abadin*, 2026 WL 217148 at *3 (citing 8 U.S.C. § 1252(b)(9)).  The court reiterates its reasoning in *Abadin*, and, finding that it has jurisdiction to consider Petitioner's APA claim, concludes that the Government's decision to re-detain Petitioner (1) constitutes an abuse of DHS's discretion, and (2) violates the APA's prohibition on agency action that is "not in accordance with law[.]"  5 U.S.C. § 706(2)(A).

Similarly, courts in this Circuit have concluded that the Government "acted arbitrarily and capriciously and violated the APA" where, as here, the Government fails to follow required procedure or demonstrate that its revocation of a petitioner's parole is the product of reasoned decision-making.  *Bostock*, 792 F. Supp. 3d at 1146.  Thus, when a petitioner's parole was improperly revoked, he is ineligible for detention, and the court need not consider which statute applies to Petitioner's detention.  *See Arias*, 2025 WL 3295385 at *4 (so concluding).  Consequently, the court sets aside the Government's decision to revoke Petitioner's parole, which was effectuated by his arrest on December 17, 2025.  (*See* Rodriguez Decl. ¶ 5.)

ORDER - 8

Finding that Petitioner is entitled to relief under the Fifth Amendment, the court grants his habeas petition.

**B.     Petitioner's Fourth Amendment Claim is not Cognizable in a Habeas Petition.**

Petitioner also asserts that the manner in which the Government re-detained him violated his Fourth Amendment rights.  (Pet. ¶¶ 52-56.)  A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of Petitioner's detention pending removal.  28 U.S.C. § 2241(c)(3).  It is not, however, the appropriate mechanism to challenge the legality of his arrest.  Because this claim cannot be the basis for habeas relief, the court declines to consider it at this time.

//

//

//

//

//

//

//

//

//

//

//

//

ORDER - 9

## IV.   CONCLUSION

Accordingly, the court ORDERS as follows:

(1) The petition for a writ of habeas corpus (Dkt. # 1) is GRANTED;

(2) The Government SHALL release Petitioner Roberto Bonat Hernandez from detention within FORTY-EIGHT (48) hours subject to the conditions of his most recent parole agreement;

(3) Within SEVENTY-TWO (72) hours of this Order, the Government SHALL file with the court a status report confirming that Petitioner has been released from custody and informing the court of the date and time of his release.

Dated this 7th day of April, 2026.

_____
JAMES L. ROBART
United States District Judge

ORDER - 10